UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES FRANKLIN SNYDER,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES and STATE OF IDAHO,<br><br>    Defendants. | Case No. 1:23-cv-00176-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

   The Clerk of Court conditionally filed Plaintiff James Franklin Snyder's Complaint as a result of his status as an inmate and his in forma pauperis request. Dkt. 3, 1.[1] The Court must review the Complaint to determine whether any of the claims should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order determining that Plaintiff cannot proceed and must file an amended complaint clarifying his causes of action according to the instructions in this Order.

---

[1] The Clerk of Court mistakenly notified Plaintiff that pages 9-11 were missing from his Complaint. The Clerk later determined that those pages were actually from the in forma pauperis motion and the prisoner trust statement.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

## REVIEW OF COMPLAINT: ADA AND RA CLAIMS

1. **Standard of Law for Review**

Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In addition, the Prison Litigation Reform Act (PLRA)[2] requires the Court to screen all pro se prisoner and pauper complaints before they are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Rule 12(b)(6) authority to dismiss claims was expanded by the

---

[2] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

In his Complaint, Plaintiff brings many unrelated claims with few supporting facts. The Court will discuss the deficiencies in the Complaint and provide Plaintiff with an amendment period.

### 2. ADA Title I Claims: Employment

Plaintiff brings claims under the Americans with Disabilities Act (ADA).[3] First, he asserts that his rights under Title I of the ADA have been violated. Title I applies exclusively to employment. *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir. 1999). That provision prohibits discrimination "against a qualified individual on the basis of disability in regard to ... [the] privileges of employment." 42 U.S.C. § 12112(a). Plaintiff has not clearly stated any employment claim, and, thus, cannot proceed under Title I without further amendment showing that his claims arise from employment.

### 3. ADA Title II Claims: Discrimination and Accommodation

Plaintiff next asserts that the state of Idaho, the county of Kootenai, and their employees have discriminated against him under Title II of the ADA. Title II of the ADA applies to state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). A Title II ADA claim must be brought against the state or the state entity. *See U.S. v. Georgia*, 546 U.S. 151 (2006). Title II prohibits a "public entity" from discriminating against a

---

[3] Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. § 12101, *et seq*. (Title I), § 12132, *et seq*. (Title II).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

"qualified individual with a disability" on account of that individual's disability and from denying the benefits of, or excluding a qualified individual from participating in, "the services, programs, or activities of a public entity." 42 U.S.C. § 12132.

Plaintiff suffers from the following alleged qualifying disabilities: Traumatic Brain Injuries (TBI), severe post-traumatic stress disorder (PTSD), paranoia (as a result of being a victim of violence—his semi-truck was hijacked and he was run over twice), mental disability, and physical disabilities, including having had over 100 fractures and compound fractures (all limbs and facial reconstruction). *See* Dkts. 3-8.

Plaintiff has subtitled his Complaint "Failure to Train," and his "Causes of Action" section states that he is bringing "failure to train" claims. It appears he is asserting that government actors should have been made aware of the symptoms of TBI and PTSD by their supervisors, identified him as a person with that disability when they encountered him, and treated him differently. (If he is claiming discrimination on the basis of other qualified disabilities, he must so state in his amended complaint.) As a result of the inadequate training, he asserts, state actors refused to accommodate his differences and removed him from government rehabilitation and other programs because of his differences.

District courts in the Ninth Circuit have found ADA failure-to-train claims cognizable. *See, e.g., Robertson v. Millett*, No. CV-22-00009-PHX-GMS, 2022 WL 16571702, at *5–6 (D. Ariz. Nov. 1, 2022); *Reed v. Nelson*, No. 2:20-CV-0512-DMC-P, 2021 WL 2417655, at *3–4 (E.D. Cal. June 14, 2021); *Est. of Jackson v. City of Modesto*, No. 1:21-CV-0415 AWI EPG, 2021 WL 4819604, at *11–12 (E.D. Cal. Oct. 14, 2021).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

In these cases, the courts applied the *Monell*[4] framework to ADA failure-to-train claims, meaning that a plaintiff must allege facts showing all of the following: "(1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] came into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right." *Hollandsworth v. City & Cnty. of Honolulu*, 440 F. Supp. 3d 1163, 1181 (D. Haw. 2020) (citing *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)); *see Reed*, 2021 WL 2417655, at *3–4; *Est. of Jackson*, 2021 WL 4819604, at *11–12.

An example of a failure-to-train claim that proceeded beyond summary dismissal is *Estate of LeRoux v. Montgomery County, Maryland*, No. 8:22-CV-00856-AAQ, 2023 WL 2571518 (D. Md. Mar. 20, 2023). There, the court reasoned:

> Plaintiffs have alleged that there were a number of reasonable accommodations that could have been implemented in the hours that led to the shooting that would have allowed Mr. LeRoux to effectively communicate and, in turn, survive the encounter. For example, in Counts I and V, Plaintiffs claim that Mr. LeRoux would still be alive if reasonable accommodations – such as dispatching the Mobile Crisis Team, the Crisis Intervention Team, or an officer trained in CIT – had been provided. ECF No. 25, at ¶¶ 118, 170. Likewise, in Counts II and VI, Plaintiffs claim that reasonable de-escalation techniques – including calling mobile crisis services, using crisis intervention techniques, or waiting for the crisis negotiator before engaging Mr. LeRoux by surrounding his vehicle, swearing at him, and directing

---

[4] *See Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) (to state a civil rights claim against a municipal entity, a plaintiff must allege facts showing that the entity had a policy or custom that caused the plaintiff's injuries through deliberate indifference to the plaintiff's constitutional rights).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

> their weapons at him – were similarly reasonable
> accommodations. *Id*. at ¶¶ 133, 183. Accordingly, Plaintiffs
> have alleged a number of possible accommodations that
> allegedly were available to Defendants. Further, Plaintiffs
> allege that had these modifications been provided, individuals
> with specialized training "could have evaluated [Mr.
> LeRoux], stabilized the mental health crisis, and arranged
> mental health services." *Id*. at ¶ 20.

*Id*. at *11. *See also Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018) (reversing summary judgment, in part, where officers shot a man who was running around in a convenience store and ignored two commands to drop the scissors, because the officers "had the time and the opportunity to assess the situation and potentially employ ... accommodations ... including de-escalation, communication, or specialized help").

Many of Plaintiff's claims do not show a clear connection between his disability and the discriminatory or retaliatory act. He asserts both that discrimination occurred because he was disabled *and* that it occurred because state actors were trying to punish or get even with him for suing a law enforcement officer for excessive force; both of these "causes" are included in the Complaint. Claims that state actors did not accommodate his disabilities or that supervisory state actors did not properly train state actors to accommodate his disabilities should be brought as ADA claims; claims that he was retaliated against because he sued a law enforcement officer should be brought as civil rights claims under 42 U.S.C § 1983 (more fully explained below).

The following potential ADA failure-to-train claims must be separated, clarified, and supported with additional facts:

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

- Plaintiff alleges that he "today is prejudicially discriminated against held in specialty housing in Medium Maximum custody based off north Idaho's unlawful discrimination and failure to train state and county employee's." Dkt. 3-2, p. 9 (verbatim).

- Plaintiff asserts that he was moved frequently in the programs, that his medicine was changed, and that his instructors were changed—all of which left him lost and confused. He asserts these problems arose because the state of Idaho did not train its staff to properly deal with persons with TBI and PTSD. Dkt. 3-2 p. 10.

- Plaintiff alleges that the State and County failed to train Judge Mitchell, who kept placing him in programs and specialty courts, from which he was later removed. *Id.*, p. 9.

- The following statement seems to reference supervisory officials' failure to train, but it is confusing and should be separated into individual claims and clarified: "Supreme Court rulings and failure to train state and county officials triggering PTSD and wrongful arrest, failure to adhere to ADA 1990 federal laws and triggering a PTSD Disability illegally." Dkt. 3-2, p. 2 (verbatim).

- Plaintiff alleges that his PTSD and TBI symptoms were known to Kootenai County employees from Plaintiff's medical record records, through witnesses and through IDOC employee Eric Kiehl. Nevertheless, county

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

employees discriminated against him during an emergency situation. They tried to inject him [with what, Plaintiff does not say] four times. The employees "profiled, discriminated, and retaliated against Snyder due to lies and what cops said mistaken my disabilities as something nothing other than retaliation and discrimination after mental health professional cleared Snyder to leave[.]" Dkt. 3-2, pp. 6-7 (verbatim). Plaintiff alleges that county employees beat him almost unconscious. The county security guard crawled on Plaintiff's emergency room bed and placed his knee on Plaintiff's neck, choking him; county doctors performed a "federal illegal doctor hold"; and a police officer participated in the violations. *Id.*, p. 7. A doctor illegally injected Plaintiff with a dangerous drug. *Id.*, p. 16. He asserts that he had to have throat surgery as a result of this incident and that he suffered an additional TBI. Dkt. 3-4, p. 1. These allegations should be separated into claims showing how the failure to train affected each particular employee's improper treatment of Plaintiff (for example, what training was needed and how did a lack of ADA training lead to an injury attributed to Defendants?).

- Plaintiff claims that the state "allows counties to go default in post convictions as pattern on disabled people." Dkt. 3, p. 2.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

- Plaintiff claims that government officials were trained improperly and, as a result, retaliated against him because of his disability in all hearings held in Kootenai County District Court. *Id.*

- Plaintiff alleges that he was accepted into the Mental Health and Drug Court program, but state and county officials discriminated against him, provided him with no accommodations, and retaliated against him due to his physical and mental disabilities—all due to lack of ADA training. He asserts that he never asked to be removed from mental health or drug courts, but the state and its attorney asked for him to be removed. Dkt. 3-3, p. 6.

- Plaintiff alleges that he was accepted into the Cottonwood Rider program, but, as a result of lack of ADA training, state and county officials discriminated against him, provided him with no accommodations, and retaliated against him due to his physical and mental disabilities.

- Plaintiff asserts that the IDOC staff were trained improperly and therefore removed him from the Rider program and placed him in the Orofino prison segregation unit for three months; they should not have kept a physically and mentally disabled man in a special housing unit. *Id.*

- Plaintiff states that first responders must be better trained in the physical signs of TBI and PTSD. He asserts that the state of Idaho and Kootenai

> County officials failed to train those individuals participating in various violations.
>
> - Plaintiff asserts that, because of inadequate ADA training, police officers profiled him, conspired to beat him, and stole his new GMC SUV. Dkt. 3-3, pp. 5-6.
>
> - Plaintiff asserts that, because of lack of training, prison employees opened all of his legal mail. Dkt. 3-2 p. 10.
>
> - Plaintiff asserts that, because of lack of training, prison employees took advantage of him because he is physically and mentally disabled. *Id.*

For each instance of discrimination or non-accommodation listed above regarding each state and county official or employee, Kootenai County court employee, IDOC employee, county security guard, doctor, and police officer that is to be included in his amended complaint, Plaintiff must clarify what training is missing, who failed to put in place proper training, what the proper training should be, how the proper training would have addressed his specific disability or disabilities, and what the result was of not having the training in place when employees encountered him. Plaintiff also must state the who, what, where, when, why, and how of each instance of loss, damage, or injury Plaintiff received as a result of the lack of ADA training. Plaintiff cannot proceed on his broad allegations that "the state of Idaho failed to train all state officials, county workers, courts, jailers, hospitals, doctors, colleges, prisons, [and the] Idaho dept of Corrections." Dkt. 3, p. 2 (verbatim).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

### 4. ADA Claims Precluded by *Heck v. Humphrey*

Plaintiff may be alleging that his *conviction* was in violation of the Americans with Disabilities Act (ADA). He says that he was illegally convicted because state and county officials withheld eyewitnesses from him. Dkt. 3-3, pp. 5-6. A conviction cannot be challenged under the ADA or § 1983. *See Bogovich v. Sandoval*, 189 F.3d 999, 1004 (9th Cir. 1999) ("Our habeas corpus precedent, arising from § 1983 claims, applies with equal force to claims brought by prisoners under the ADA. If an ADA claim challenges the validity or duration of confinement, the prisoner's sole federal remedy is the writ of habeas corpus."). Any such claims must be separated into a different type of action—a habeas corpus action under 28 U.S.C. § 2254. The separate action must be submitted to the Clerk of Court as a § 2254 petition and should not be included with his amended complaint in this action.

If Plaintiff is alleging that he was denied parole as a result of an ADA violation, he can challenge only the parole *eligibility factors* that were used to determine his parole status, but he may not challenge a *denial* of parole. In *Bogovich*, the court allowed the prisoners to proceed in a civil rights/ADA action where they alleged that they were denied a parole release date due to a history of substance abuse, because the prisoners would not necessarily be paroled but for consideration of the substance abuse history, as it was just one of many factors considered for parole eligibility. 189 F.3d at 1003-04.

If Plaintiff is asserting that he was denied parole as a result of failure to properly train the parole board members, he must state facts supporting cause of action elements and identify the following, insofar as possible: what training is missing, who failed to put

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

in place proper training, what the proper training should be, how the proper training would have addressed his specific disability or disabilities, and what the result was of not having the training in place when his parole eligibility was assessed. Plaintiff also must state the who, what, where, when, why, and how related to the allegedly unfair hearing. The only remedy available in a civil rights action is a new parole hearing with the corrected procedures in place.

5. **Rehabilitation Act Claims**

Plaintiff also brings claims under the Rehabilitation Act (RA). 29 U.S.C. §§ 701, *et seq*. The Rehabilitation Act (RA) is materially identical to the ADA, except that the RA is limited to programs that receive federal financial assistance. *Armstrong v. Davis*, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) (internal quotations omitted), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). One of the only differences between the RA and Title II of the ADA is that the RA imposes a stricter causal standard, requiring a plaintiff to show the denial of services was "'solely by reason of' disability,'" rather than just "by reason of" disability. *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013) (citing 29 U.S.C. § 794(a)). To the extent that Plaintiff states ADA claims in his amended complaint, he will also be permitted to proceed under the RA if he alleges that the defendant receives federal funding.

6. **Claims against the United States**

Plaintiff asserts that the United States failed to train Idaho officials under the ADA and RA. While one of the stated purposes of the ADA is "to ensure that the Federal

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities," 42 U.S.C.A. § 12101, there is no precedent suggesting that a private cause of action exists under the ADA simply because this purpose was set forth in the statute. *See, e.g., Whooten v. Bussanich*, 2005 WL 2130016, at *7 (M.D. Pa. Sept. 2, 2005) (holding that the "ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government.").

In addition, the United States is specifically excluded from coverage as employer under the ADA (42 U.S. C. §§ 12101, 12111(5)(b)(1)), and therefore an ADA action may not be brought against the United States or an officer of a federal agency in his official capacity. *See Kemer v Johnson* 900 F Supp 677 (S.D. N. Y. 1995). Therefore, claims against the United States are subject to dismissal with prejudice and should not be included in an amended complaint.

## REVIEW OF COMPLAINT: § 1983 CLAIMS

1. **Standard of Law for § 1983 Civil Rights Claims**

To state a claim under 42 U.S.C. § 1983, the civil rights statute, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Title 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution. Plaintiff has checked the box on the complaint form that he desires to bring § 1983 claims, but it is unclear which claims he is asserting under § 1983, as the entire complaint seems aimed at ADA training claims.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

2. **Section 1983 Claims based on Disability Discrimination—"Parallel Claims"**

Any claims based on discrimination or failure to accommodate because of a disability must be brought under the ADA, rather than § 1983. Asserting that the same facts state an ADA and a § 1983 claim is not permissible; Plaintiff's sole remedy for disability discrimination lies with the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). *Cf. Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057-58 (9th Cir. 2009) (analogizing ADA claim to ADEA claim in not permitting parallel ADA/§1983 claims to proceed) ("We are unable to perceive, and counsel have not pointed us to, a constitutional claim for age discrimination that is not vindicated fully by the ADEA."). *Cf. Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 841 (D. Nev. 2021) ("Borenstein cannot bring his equal protection claim for disability discrimination under § 1983," but he can "maintain an equal protection claim to the extent it is based on indigency because the ADA does not cover that.").

3. **Other Potential § 1983 Claims**

If Plaintiff has claims he intends to bring under § 1983 that are not parallel ADA claims, he must separately set those forth in his amended complaint. If not, he should not include § 1983 as a general legal basis for his claims. Each claim needs a proper legal basis and adequate supporting facts.

## CONCLUSION

Plaintiff cannot proceed on his Complaint. He must file an amended complaint within 30 days after entry of this Order. If he does not desire to proceed, he should file a notice of voluntary dismissal.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

## ORDER

**IT IS ORDERED** that Plaintiff must file an amended complaint, correcting the deficiencies in the original complaint and intended to replace the original complaint in full, no later than **30 days** after entry of this Order. Failure to do so will result in dismissal of his Complaint without prejudice.

DATED: August 4, 2023

B. Lynn Winmill
U.S. District Court Judge