UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES FRANKLIN SNYDER,<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF COEUR D'ALENE, KOOTENAI COUNTY, CHAD PAGE, WARDEN RANDY VALLEY, WARDEN JANE DOE, WARDEN JOHN DOE 1-2, DIANE REMACLE, EMMA WILSON, and MELISSA CARR,<br><br>                Defendants. | Case No. 1:23-cv-00176-BLW<br><br>**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

      The Court has reviewed the Second Amended Complaint of Plaintiff James Franklin Snyder. Dkt. 26. This civil rights case challenges various aspects of Kootenai County case CR28-19-6825, *Idaho v. Snyder* ("Case 6825")—from arrest and pretrial stage through conviction, several probation grants and revocations, and a final relinquishment of jurisdiction that required Plaintiff to serve his sentence. Also pending before this Court is Plaintiff's related successive habeas corpus petition in Case 1:24-cv-00336-BLW, *Snyder v Ross*, which gives the Court insight into Plaintiff's pro se efforts to identify valid claims and determine how to present to the courts in a manner in which the claims will be heard.

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 1**

The screening standard of law for pro se prisoner complaints is set forth in the Court's prior Order and is not repeated here. For the reasons that follow, Plaintiff will be permitted to proceed to the next stage of litigation on only the retaliation claims against only the prison case managers.

1. **Background**

The Idaho Court of Appeals described Plaintiff's criminal history as follows:

> James Franklin Snyder pled guilty to possession of a controlled substance [on June 4, 2019].[1] I.C. § 37-2732(c)(1). In exchange for his guilty plea, an additional charge and an allegation that he is a persistent violator were dismissed. The district court sentenced Snyder to a unified term of seven years, with a minimum period of confinement of three years. The district court suspended the sentence and placed Snyder on probation. Snyder admitted to violating the terms of his probation. The district court revoked probation, ordered execution of his sentence, but retained jurisdiction.

*State v. Snyder*, No. 49736, 2023 WL 2489842, at *1 (Idaho Ct. App. Mar. 14, 2023), *cert. denied*, 143 S. Ct. 2678 (2023).

Plaintiff also appealed denial of a Rule 35 motion to reduce his sentence. *Id.* Additional case history shows:

> After Snyder completed his rider, the district court again suspended the sentence and placed Snyder on probation. Snyder admitted to violating the terms of his probation. The district court revoked Snyder's probation and ordered execution of his original sentence. Snyder filed an I.C.R. 35 motion, which the district court granted by again retaining jurisdiction. Before completion of the rider and based on information in an addendum to his presentence investigation

---

[1] For dates and other docket facts, see Idaho Supreme Court register of actions for Kootenai County case CR28-19-6825, *Idaho v. Snyder* (accessed 1/6/2025).

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 2**

> report, the district court held a hearing and ultimately relinquished jurisdiction.

*State v. Snyder*, No. 50428, 2023 WL 7181444, at *1 (Idaho Ct. App. Nov. 1, 2023). The state district court's relinquishment of jurisdiction was affirmed on appeal. *See id*.

### 2. Defamation, Slander, and Libel Claims

#### A. Heck v. Humphrey *Bar*

In this civil rights case, Plaintiff brings defamation, slander, and libel claims (together "defamation claims") against "the wardens for the city, county, and prison"; the "chief"; three prison case managers; and two municipal entities. Dkt. 26 at 2. He asserts that various government officials changed his Washington state criminal history to create false information that the Idaho state court relied upon to sentence him and revoke his probation. In particular, he asserts that he was wrongfully labelled "the highest ranking Mexican Mafia member in Washington State." *Id*. This caused him to be falsely arrested on the charges in Case 6825, and to be brutally attacked by the Mexican Mafia, who ran over him with a semi-truck at 67 miles per hour. *Id*. at 1-4. Defendants also allegedly "went back in Snyder's criminal history adding in 2004 child molestation charges and rape charges." *Id*. at 6. He asserts that all of these rumors spread throughout the small towns near Plaintiff's residence, negatively affecting his livelihood. *Id*. at 5.

The Court previously warned Plaintiff that he could not proceed on claims related to his criminal conviction or to his probation revocations that fall within the bar of *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that, where a favorable verdict in a civil rights action would necessarily imply that a plaintiff's

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3**

conviction or sentence is invalid, he must first prove that the conviction or sentence has been overturned before the civil rights action can proceed. *Id.* Such a claim is not cognizable under § 1983. *Id. Heck* applies to civil rights cases challenging probation violation charges and probation revocations. *See Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995). If success would *not* imply invalidity of a conviction or sentence, "the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487 (footnote omitted); *Edwards v. Balisok*, 520 U.S. 641 (1997) (applying same principle to civil rights actions challenging deprivation of prison good-time credits that would otherwise shorten an inmate's sentence).

Plaintiff recently completed his sentence and was released, which impacts the *Heck* analysis. In *Spencer v. Kemna*, 523 U.S. 1 (1998), in the habeas corpus context, the Court held that, while an ex-prisoner's pending habeas petition challenging his underlying conviction does not become moot upon his release due to the continuing consequences of a criminal record, the petitioner's challenge to his parole revocation was mooted by his release from custody. *See* id. at 7–13. But, in dicta, five Justices in *Spencer* "suggested that *Heck*'s scope might be narrower than *Heck* itself indicated." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1190 (9th Cir. 2015). The Justices seemed to agree that a petitioner *could* bring such a claim under § 1983 without satisfying *Heck*'s favorable-termination requirement, as "it would be impossible as a matter of law for him to satisfy" that requirement due to the unavailability of habeas relief. *Id*. at 1190-91.

In the § 1983 context, the Ninth Circuit Court of Appeals applied the *Spencer* concurrence's reasoning and held that *Heck* did not preclude an ex-prisoner's § 1983

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 4**

claim challenging denial of good-time credits for the reason that he could no longer bring that claim in a habeas petition. *See Nonnette v. Small*, 316 F.3d 872, at 875–76 (9th Cir. 2002). The Ninth Circuit later explained that the *Nonnette* holding affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters"—not challenges to underlying convictions, because ex-prisoners continue to be able to challenge their underlying convictions in habeas after their release. *Id.* at 878 n.7 (citing *Spencer*, 523 U.S. at 7–12); *see also Lyall*, 807 F.3d at 1192 (holding that the plaintiff's claim "d[id] not come within the narrow exception recognized in *Spencer* and *Nonnette*" because it challenged his underlying conviction).

In *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006), the Court set forth a two-factor test to guide the analysis of whether an ex-prisoner may proceed in § 1983 if he has not overturned his original conviction or sentence in habeas corpus. First, a § 1983 claim must not challenge a conviction, but may challenge only "loss of good-time credits, revocation of parole or similar matters." *Id.* at 705 (quoting *Nonnette*, 316 F.3d at 878 n.7). Second, an ex-prisoner must have timely pursued "available habeas relief." *Id.* In *Guerrero*, the Court declined to apply the exception to *Heck* to § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy, because the ex-prisoner did not try to overturn his conviction during the proper time frame, and, therefore, the Court concluded: "His failure timely to achieve habeas relief is self-imposed." *Id*. *See also Cunningham v. Gate*s, 312 F.3d 1148, 1153 n.3 (9th Cir. ) (holding that *Heck* barred the plaintiff's § 1983 claims despite the fact that habeas relief was unavailable. Habeas relief was "impossible as a matter of law" because he failed timely to pursue it. "We decline to

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 5**

hold that Cunningham's failure timely to pursue habeas remedies takes his § 1983 claim out of *Heck*'s purview.").

Here, Plaintiff asserts that Defendants wrongfully caused him to be arrested, convicted, to be sentenced to a longer term, and to have his probation revoked because they proffered or relied upon false gang-affiliation information. These wrongful acts, in turn, upset him so much that he attempted suicide six times.

These allegations call into question the validity of his conviction and probation revocations—if Defendants would not have acted wrongfully, he would not now be convicted and incarcerated. The very reason he was arrested and drugs were found is that officers relied on and propagated the rumor that he was a Mexican Mafia leader. Dkt. 26 at 2-3. Plaintiff already pursued a habeas corpus challenge to this conviction and sentence, but his case was dismissed with prejudice on procedural default grounds. *See* Case No. 1:22-cv-00311-REP, *Snyder v. Ramirez* ("Case 311, " Dkt. 56). The Ninth Circuit Court denied a certificate of appealability in that case. Case 311, Dkt. 63. Therefore, Plaintiff has not shown that he exercised diligence in using the habeas corpus remedy while it was available to him. The fact that he has filed a successive post-conviction action in federal court without obtaining authorization to do so from the Ninth Circuit Court of Appeals, as the law requires, does not change this analysis.

Therefore, on the record, the Court concludes that Plaintiff may not proceed defamation claims in a civil rights action that call into question the validity of his conviction and completed sentence because he has not first overturned his conviction, probation revocation, or sentence by any lawful means.

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 6**

3.  **Failure to Cite Municipal Policy or Custom**

A second reason Plaintiff may not proceed on defamation claims is that he has not named a proper Defendant who is responsible for the alleged constitutional violation. He asserts only that the city and county changed his records. But a local governmental entity can be a proper defendant in a § 1983 action only under limited circumstances. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Court previously notified Plaintiff that he must allege execution of an official policy or unofficial custom by government officials inflicted the injury of which the plaintiff complains, including (1) the plaintiff was deprived of a constitutional right, (2) the governmental entity had a policy or custom, (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right, and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff has not shown any written policy or widespread custom that is the basis for a claim against the city or county. He has stated no causal link between each

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 7**

municipal defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These claims will be dismissed for failure to state a federal claim upon which relief can be granted.

### 4. Retaliation Claims

Plaintiff asserts that, in the midst of contesting his criminal action in court, prison officials terminated his law library access between October 15, 2022, and April 2024—when he was attempting to litigate his criminal or post-conviction case. He states that he has video evidence that proves the wardens of "ISCC, NICI, ICIO, and SAWC" were involved in retaliation. However, this allegation is insufficient. He must state what evidence is shown on the video recordings, and how that supports an element of a retaliation claim against each warden. He states only that Warden Valley reversed termination of his legal resource center access in April 2024. Dkt. 26-3 at 1. This act does not show that Valley did anything that would constitute a violation of Plaintiff's First or Fourteenth Amendment rights. There are no specific allegations that Valley earlier terminated Plaintiff's access, and, if so, when that occurred.

Plaintiff asserts that case managers Melissa Carr, Emma Wilson, and Diane Remacle "orchestrated" moving him an unreasonable number of times among housing unit and prisons. Dkt. 26-3 at 1. He asserts that Remacle "flopped [his] retained jurisdiction 2 ½ hours after [he] received his Supreme Ct mail already opened. Leading to over quarter year in SHU segregation at Orofino prison ICIO; Defendant Warden Jane

Doe took charge and took, confiscated all [his] legal mail knowing and intelligently until [he] lost his cases and received preopened mail." *Id*.

Case manager Emma Wilson allegedly knew Plaintiff was minimum custody, but, when he was transferred from ICIO to ISCC, she relied on documents from every institution "stating Snyder is a threat, problem, etc., refusing Snyder minimum custody," which apparently resulted in him being placed in a more restrictive housing unit. *Id*. at 2.

Plaintiff alleges that, after his "mother emailed and communicated about NICI to Chad Page the chief, 'Head Cheese', Defendants Diane Remacle and Warden Jane Doe moved Snyder non stop and switched Snyder drug groups 3 times and 6 moves demanding [h]e quit doing legal work." *Id*.

Plaintiff alleges that Defendants contravened Judge Mitchell's Rule 35 Ruling of June 28, 2022, changing Plaintiff's medication in retaliation after he refused to quit doing legal work. "All I wanted …. was my life back that … defendants ruined with terrible actions, and defendants intentionally retaliated to stop me from exposing what they did!" *Id*. at 3. It is unclear which Defendants did this, when, or where.

Plaintiff further alleges that Defendants Emma Wilson, Randy Valley, and Warden Jane Doe of SAWC "made sure Snyder got a DOR (disciplinary action) after Snyder filed action 23-5841, with videos proving beyond reasonable doubt the defendants terminated Snyder's access to courts law library and stole legal mail when they moved Snyder to stop my federal cases proving defendants falsified Snyder's records and caused 6 suicide attempts." *Id*. at 4. Snyder was moved back after he received US Ct mail March 2024." *Id*.

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 9**

It appears that Randy Valley and Warden Jane Doe were wardens at different facilities. It is unclear how Plaintiff knows these and other Defendants acted together to make sure Plaintiff was charged with a disciplinary action. He does not state what the disciplinary action was for, and why it was not a legitimate charge. He does not state the content of the videos.

Plaintiff was previously ordered to set forth additional facts showing why these prison officials—who have custody of him after his conviction and sentence—would want to "cover up" wrongdoing by city or county law enforcement officers, county prosecutors, or the county courts that occurred during the course of his criminal and post-conviction actions. However, Plaintiff has provided no link between these different officials, that is, why later officials would want to stop the public from finding out what the earlier officials from different jurisdictions allegedly did, how the prison officials "knew" that the municipal officials had engaged in wrongdoing, and why the prison officials had a motive to retaliate for Plaintiff's actions against the municipal officials. He may not proceed on this theory of retaliation.

Plaintiff alternatively asserts that prison officials wanted Plaintiff to stop doing legal work and filing court cases. It appears that Plaintiff has consistently filed many cases trying to overturn his convictions, sentences, and parole revocations. It is unclear whether he followed proper procedures for doing so, or whether his moves are prompted by a legitimate reason such as refusing to comply with prison rules or misbehavior. The Court construes the allegations liberally and concludes that Plaintiff has stated a First

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 10**

Amendment/Fourteenth Amendment retaliation claim against the case manager defendants.

However, as set forth above, Plaintiff has not stated plausible facts showing that any of the wardens were personally involved in any retaliation for Plaintiff's court filings. Naming the wardens in the same sentence with a set of vague allegations does not meet the Rule 8 or § 1915 screening standard. Plaintiff may seek to add these Defendants back into the lawsuit if, after discovery and before the final amendment deadline, he shows that one or more of the wardens were personally involved in the retaliatory actions.

## MOTIONS

Plaintiff has filed a "Motion Letter & Ask for Redact All of Case due to Fear of Retaliation and Single Judge for Habeas 1:24cv336" and a Motion to Seal Case. Dkts. 27, 32. He asks that the Court "please redact this whole case with gang language." Dkt. 27 at 1. He also would like the entire case sealed "[s]o the defendants can't retaliate or pursue unjust actions." Dkt. 32 at 1. Plaintiff has been released from prison and is living in Washington state. *See id*.

There is a strong presumption of public access to judicial records. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to have documents redacted from public view or file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*, 447 F.3d at 1178).

Plaintiff has not sufficiently stated facts showing any government official would retaliate against him in the future for the alleged wrongful labeling. Further, he is refuting that he is a gang member and is asserting that the label constitutes defamation; therefore, he himself is publishing the fact that he is not a gang member, and any future consequences from gangs knowing this information comes from Plaintiff's own public refutation.

Further, nothing in this action shows that Plaintiff does not have access to the courts. He has filed multiple cases and continues to file multiple documents in each. In addition, he is now out of prison. Any future retaliation claim regarding access to courts must be brought in a separate civil rights action, with proper factual support.

Plaintiff also asks that this Court retain his habeas corpus case. There are no current plans for Plaintiff's habeas corpus case to be transferred to another judge, but, if that occurs, Plaintiff may provide briefing supporting his position that his cases should be consolidated under one judge. The motions will be denied in all respects.

Plaintiff has also filed a "Motion to Expand" and a "Motion to Amend Case Record." Dkts. 28, 29. These motions will be denied without prejudice, as they raise a large number of new separate incidents that allegedly harmed him. Any new claims, including failure to protect claims, or those related to his release, or unrelated claims against other defendants, must be brought in a new complaint and case. Alternatively, if Plaintiff asserts that the state court records attached to his motions should be treated as evidence in this case, he must disclose those to Defendants and state why they should be considered evidence.

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 12**

# ORDER

**IT IS ORDERED:**

1. Plaintiff's "Motion Letter & Ask for Redact All of Case due to Fear of Retaliation and Single Judge for Habeas 1:24cv336" (Dkt. 27) and Motion to Seal Case (Dkt. 32) are DENIED.

2. Plaintiff's "Motion to Expand" (Dkt. 28) is DENIED without prejudice.

3. Plaintiff's Motion to Amend Case Record (Dkt. 31) is DENIED without prejudice.

4. Plaintiff may proceed only on First/Fourteenth Amendment retaliation claims only against Defendants Diane Remacle, Emma Wilson, and Melissa Carr in the Second Amended Complaint (Dkt. 26).

5. Claims against "the wardens for the city, county, and prison", Warden Randy Valley, and Jane Doe Warden of SAWC are DISMISSED without prejudice to amendment for failure to state a federal claim upon which relief can be granted.

6. Claims against Warden John Doe 1-2 are DISMISSED because the defendants are not sufficiently identified and for failure to state a federal claim. Plaintiff may amend his pleadings to state their true names and provide allegations showing personal participation in a constitutional violation before the amendment period (set forth below) concludes.

7. Claims of defamation, libel, and slander against all Defendants are DISMISSED without prejudice as barred by *Heck v. Humphrey*.

8. Claims against the City of Coeur d'Alene and Kootenai County are DISMISSED for failure to state a federal claim upon which relief can be granted.

9. Retaliation claims asserted under an Eighth Amendment theory are DISMISSED for failure to state a federal claim upon which relief can be granted.

10. Defendants Diane Remacle, Emma Wilson, and Melissa Carr will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Second Amended Complaint (Dkt. 26), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

> Mary Karin Magnelli, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendants.

Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice

**SECOND SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 14**

within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

11. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

12. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

13. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

14. Dispositive motions must be filed no later than 300 days after entry of this Order.

15. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

16. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

17. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

18. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

19. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

20. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 21, 2025

_____
B. Lynn Winmill
U.S. District Court Judge