UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES FRANKLIN SNYDER, | |
| Plaintiff, | Case No. 1:23-cv-00176-DCN |
| v. | **MEMORANDUM DECISION AND ORDER** |
| EMMA WILSON, DIANE REMACLE, MELISSA CARR, DIONNE GILLUM, AMANDA MONTALVO, and GLENN ARMSTRONG, | |
| Defendants. | |

## INTRODUCTION

In April 2023, Plaintiff James Franklin Snyder, who was an inmate at the Idaho Department of Correction (IDOC), filed his original civil rights complaint in this case. Dkt. 3. He is pursuing his second Amended Complaint. Dkt. 26. Plaintiff was authorized to proceed on claims that IDOC case managers Diane Remacle, Emma Wilson, and Melissa Carr "orchestrated" moving him an unreasonable number of times among housing units and prisons in retaliation for Plaintiff filing multiple court cases, limited to incidents arising no earlier than March 9, 2021. Dkts. 24 at 10-11, 26-3 at 1.

Defendants have filed a Combined Motion to Dismiss and Motion for Summary Judgment and a Reply. Dkt. 39, 48. Plaintiff has filed a Response. Dkt. 44. He has also

filed a Motion to Amend and a fifth proposed pleading entitled "Amended Complaint," which the Court will refer to as the "fourth Amended Complaint" throughout this Order. Dkts. 45, 46. Based on the Court's screening of the fourth Amended Complaint, the Court will deny Defendants' motions as moot, grant Plaintiff's motion, and dismiss the fourth Amended Complaint with leave to amend one claim in a new severed case.

## DEFENDANTS' MOTION FOR SUMMARY DISMISSAL

Plaintiff was notified in the Initial Screening Order that an amended complaint would replace a prior original complaint in full. Dkt. 12 at 15. Therefore, Plaintiff's fourth Amended Complaint supersedes in full the second Amended Complaint that is the subject of Defendants' pending motions. In the dismissal motion, Defendants correctly argue that official capacity claims against them as state employees are barred by Eleventh Amendment sovereign immunity, and any such injunctive relief claims under *Ex parte Young*, 209 U.S. 123, 159–60 (1908), are moot because Plaintiff is no longer incarcerated. The fourth Amended Complaint does not contain official capacity claims or injunctive relief claims. *See* Dkt. 46 at 1. Therefore, the Motion to Dismiss (Dkt. 39) will be denied as moot.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment, asserting that Plaintiff failed to properly exhaust his claims before filing his lawsuit on April 9, 2023 (mailbox rule date of filing of original complaint). *See* Fed. R. Civ. P. 56. The recent case, *Perttu v. Richards*, 605 U.S. 460, 475 (2025), complicates the procedures for exhaustion. In *Perttu*, the inmate brought Eighth Amendment claims of sexual harassment against prison employee Petrru and First

MEMORANDUM DECISION AND ORDER - 2

Amendment claims that Pettru had retaliated and threatened to harm the plaintiff for trying to file grievance documents about the alleged abuse. The Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479.[1]

Here, Plaintiff raises somewhat similar issues, that Defendants retaliated against him for doing legal work. The scope of *Pettru* has not been explained by the Ninth Circuit Court of Appeals, and whether it would apply here is in question. But the Court need not consider exhaustion and *Pettru* applicability because Plaintiff has replaced his second Amended Complaint with a fourth Amendment Complaint, which is subject to dismissal under 28 U.S.C. § 1915. The Motion for Summary Judgment will be denied as moot.

## REVIEW OF PLAINTIFF'S FOURTH AMENDED COMPLAINT

### 1. Introduction

Plaintiff's Motion to Amend must be considered in the particular procedural posture of this case. His four prior pleadings are the original Complaint (Dkt. 3), a first Amended Complaint 23 (Dkt. 22), a second Amended Complaint (Dkt. 26), and a third Amended Complaint (later withdrawn) (Dkt. 36). Plaintiff submitted his fourth Amended Complaint on April 2, 2025, when he was no longer incarcerated and before the deadline for the filing of amended pleadings, June 20, 2025. *See* Dkt. 34. While Plaintiff's Motion to Amend is timely, Defendants oppose the amendment on several grounds, such as futility and failure to state a claim. Dkt. 49.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

The Court has reviewed all of the parties' filings, bearing in mind the following: (1) the Court has a continuing screening authority to dismiss pauper claims "at any time" during the litigation, *see* 28 U.S.C. § 1915(e)(2)(B); (2) the entire record before the Court can be used to inform its screening decision; (3) Plaintiff's many amendments have prevented this case from moving past the beginning phase of proceedings; and (4) Plaintiff was released from prison in January, giving him better access to obtain evidence and legal help to aid amendment.

## 2.  Standard of Law for Screening of All Prisoner and Pauper Pleadings

The Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before service on the defendants. 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 US. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Complaints filed pro se are to be liberally construed and "held to less stringent

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

standards than formal pleadings drafted by lawyers. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted). Nevertheless, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. A complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations marks and citation omitted). At the pleading stage, a litigant is not required to provide factual evidence. *See* Fed. R. Civ. Proc. 8(a); *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Plaintiff has attached exhibits to the fourth Amended Complaint, which the Court considers in screening. In addition, the dockets in Plaintiff's other related cases and prison records are relevant here, and the Court is permitted to take judicial notice of matters of public record in considering dismissal, including records and reports of administrative bodies. *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

Plaintiff sues Diane Remacle, his IDOC case manager at the North Idaho Correctional Institution (NICI), where inmates are placed when they are in state retained jurisdiction or "rider" sentencing programs. *See* Attachment to Order, IDOC letter. He sues Dionne Gillum, his case manager at the Idaho Correctional Center – Orofino (ICIO); Melissa Car, his case manager at Idaho State Correctional Center (ISCC); and Glenn Armstrong, warden of the St. Anthony Work Center (SAWC). Plaintiff also sues his former public defender, Amanda Montalvo.

### 3. Claims of "Deliberate Fabrication of Evidence" against All Defendants

#### A. Factual Insufficiency

Plaintiff brings claims that Defendants have falsely stated he has a sex offense on

his criminal record and he is a member of the Mexican Mafia. The record reflects that the first "rumor" is derived from public records, and the second, from Plaintiff.

As to the sex offense rumor, Plaintiff states that "someone in Kootenai County had sent Diane Remacle all the false records and Snohomish County altered summary of a case that I was never even arrested on." Dkt. 146 at 15. Plaintiff provides a "Defendant Case History" dated 08/15/15 from the Pend Oreille District, showing that on December 22, 2004, he had a rape charge; and on December 8, 2004, he had an unlawful harboring of a minor charge. Dkt. 44 at 163-64. Plaintiff has written "Dismissed" in his own handwriting on the exhibit. He has also written: "I appealed all cases to Supreme Court. I have letter from Justice Roberts. He stated how well my Habeas Corpes was wrote." Dkt. 44 at 163 (verbatim). Plaintiff has not provided sufficient factual allegations showing the date these charges were dismissed or these convictions were overturned by any court. Five amendments is sufficient opportunity to have provided this information. The Court concludes that there are no facts showing that Plaintiff did not have 2004 rape and unlawful harboring of a minor charges on his record and that he did not sufficiently provide Defendants with official documents showing these charges had been dismissed. Dkt. 44 at 163-64.

As to the Mexican Mafia membership rumor, the record shows that Plaintiff himself originated this rumor. During Plaintiff's emergency room hospital visit for a potential overdose of methamphetamine on June 29, 2021, a witness reported that Plaintiff appeared delusional and made aggressive comments toward health care providers, including, "Dr. is a [expletive] who is not allowed to put me on a hold … I'm part of the Mexican mafia. I

know people and all I have to do is make one phone call." Plaintiff's statement is documented in his federal civil rights case, 2:21-cv-00328-BLW, *Snyder v. Robinson*, Dkt. 25-3 at 14 (statement of Mental Health Specialist Katie Robinson, in Kootenai County Hospital medical records); and in Kootenai County Case No. CR28-21-11291, *State v. Snyder* (Case 11291), where the incident was the subject of a criminal conviction for battery upon certain personnel. *See* Attachment to Order, September 2, 2021 Judgment. Because Plaintiff himself started this rumor, because it is now contained in public records, and because there is no accurate way for prison officials to confirm whether it is true or not, it cannot be the basis of a falsified documents claim.

B.  Legal Insufficiency

Even if Plaintiff's prison file contains allegedly false information, he cannot proceed under the general rule—that the mere presence of allegedly false information in a convicted felon's prison records does not violate his constitutional rights or state a cognizable claim under § 1983. *Aguilar v. Superior Ct. of California*, No. 119CV01802NONEEPG, 2020 WL 5891392, at *5 (E.D. Cal. Oct. 5, 2020), *report and recommendation adopted sub nom. Aguilar v. Superior Ct. of California, Cnty. of San Bernardino*, No. 119CV01802NONEEPGPC, 2020 WL 7342690 (E.D. Cal. Dec. 14, 2020).

Two exceptions to the general rule are retaliation claims or liberty interest claims.

i.  Retaliatory False Records

In *Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997), the court recognized that a prisoner may bring a false records claim if the records were created in retaliation for the exercise of a constitutional right. But Plaintiff was warned in the Successive Review Order

(Dkt. 25) that claims asserting that false information was used to support imposition of or a change in a criminal sentence are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In his fourth Amended Complaint, Plaintiff does not address *Heck*, but simply asks the Court not treat this civil rights case as an "appeal" of his state criminal case. Dkt. 46 at 2. The Court has not construed this case as an appeal, nor could it, because the state and federal court systems are different jurisdictions.

The *Heck* bar prevents a party from challenging a criminal conviction or sentence in a civil rights action. *Heck* continues to bar civil rights challenges after a convicted felon has completed a sentence, except in instances where only good time credit is being challenged. *See Galanti v. Nevada Dep't of Corr.*, 65 F.4th 1152, 1156 (9th Cir.), *cert. denied*, 144 S. Ct. 527 (2023); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1191–92 (9th Cir. 2015) (quoting *Nonnette*, 316 F.3d at 878 n. 7; *Snyder v. City of Coeur d'Alene*, No. 1:23-CV-00176-BLW, 2025 WL 252640, at *2–3 (D. Idaho Jan. 21, 2025) (another of Plaintiff's cases). Therefore, even if Plaintiff has completed serving his time for a past conviction, *Heck* bars him from challenging the conviction or sentence in a civil rights action. Rather, he must challenge any alleged false information in the criminal action.

Plaintiff had several criminal convictions and sentences and was moved in and out of drug court, mental health court, and the retained jurisdiction (rider) program by the state court judges. Hence, the following claims are subject to *Heck*:

- Remacle, an IDOC case manager at NICI, "violated [his] rights to remove [him] from drug court." Dkt. 46 at 10.

- Dionne Gillum, an IDOC case manager at ICIO, prevented him from remaining in the retained jurisdiction program instead of being returned

to prison. Dkt. 46 at 13.

- Plaintiff's criminal attorney, Amanda Montalvo, interfered in his parole, his placement in mental health court, and his judgment and sentence. Dkt. 44 at 9. "Amanda falsified my current original judgment and sentence and upon doing went into Snyder's criminal history and added Child Molesting accusations to further cause so much … retaliation…." *Id*. at 10.

- Montalvo "knowingly had [him] attacked by cops, hospital staff, security, jailers in Kootenai County, IDOC [and] staff." Dkt. 46 at 20. (These allegations are the same as the basis of his criminal conviction for battery upon certain personnel and cannot be challenged under § 1983.)

All claims aimed at Plaintiff's criminal judgment and all aspects of his sentencing should have been raised in state court initial, direct appeal, or post-conviction proceedings. Claims barred by *Heck* are subject to dismissal without prejudice.

        ii.   <u>Liberty Interest in Not Having False Records</u>

Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," so long as they are "*not … deprived of a protected liberty interest without due process of law*." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (emphasis added). A plaintiff must provide facts showing he has a liberty interest in having his criminal history record corrected. Such an interest may arise from a state statute or the Fourteenth Amendment Due Process Clause. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989).

To the extent Plaintiff is asserting that his record should have been corrected so the parole board did not include the alleged false charges when deciding whether Plaintiff was suitable for parole, he does not have a liberty interest in such a claim. There is no liberty

interest in parole eligibility arising from the United States Constitution. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979); *Swarthout v. Cooke,* 562 U.S. 216, 220 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.").

Neither is there a liberty interest in parole arising from Idaho state law. Federal courts must look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).[2] In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court held that, as a result of the Idaho statutory scheme's language, in Idaho "parole is not an automatic right or liberty interest." *Id*. at 908. Plaintiff may not proceed under a liberty interest theory on any false records claim.

### 4. Other Claims against Public Defender Amanda Montalvo

Plaintiff brings additional claims against his criminal defense attorney, Amanda Montalvo, who worked under a public defender contract. He asserts that Montalvo fabricated evidence and otherwise erred or intentionally harmed him in his state criminal case. Even if these claims were not barred by *Heck*, they fail to state a claim.

The law is clear that a public defender does not act under color of law when representing an indigent defendant in criminal proceedings. *Cox v. Hellerstein*, 685 F.2d

---

[2] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. 216 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement.").

1098, 1099 (9th Cir. 1982) (federal criminal context). In *West v. Atkins*, 487 U.S. 42 (1988), the Court explained that when a public defender hired by the State is "representing an indigent defendant in a state criminal proceeding, the public defender "is not acting on behalf of the State; he is the State's adversary." *Id*. at 50 (relying on *Polk County v. Dodson*, 454 U.S. 312 (1981) (internal citations and alterations omitted)).

The only exception to this rule is when a plaintiff alleges facts showing that his defense attorney conspired with state officials to obtain a conviction; in such case, the attorney may be held liable under § 1983. *See Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) ("Although the Attorney Defendants are themselves private actors, private parties who corruptly conspire with a judge in conjunction with the judge's performance of an official judicial act are acting under color of state law for the purpose of § 1983, even if the judge himself is immune from civil liability") (citing *Dennis v. Sparks*, 449 U.S. 24, 28 29 (1980)). As stated above, this type of claim is presently barred by *Heck*.

Allegations that Montalvo may have intentionally harmed Plaintiff in his criminal proceedings or that she surrendered her license to the Idaho State Bar in 2023 for some type of misconduct does not change the outcome of this § 1983 analysis.

## 5. Other Retaliation Claims

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote

omitted).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

Plaintiff's complete allegations supporting his retaliation claim against NICI case manager Diane Remacle are as follows:

> Diane Remacle had been the center of every move by idoc and discriminating against me calling me sex offender names and Mexican Mafia. Which she did this in AP drug class and the inmates that were released like Cody Babbs will testify to the truth. I was moved to every single unit and my medication was changed. I told this stuff to Diane Remacle and she would not do anything. The job of a case manager is to ensure the security and well being of each inmate as they pass through the IDOC institutions, protecting the inmates from harm, if need be and securing a stable environment for each inmate. As to in which, she defied her duties to cause retaliation…."

Dkt. 46 at 12.

On his fifth opportunity to plead, Plaintiff has asserted insufficient facts to state a retaliation claim against Remacle. No plausible facts show that a single case manager at a single facility controls moves among all IDOC facilities. No facts show Remacle had

authority over internal facility moves or facility-to-facility moves. Plaintiff has not set forth which dates he was moved, who was responsible for the moves, what reasons were given for the moves, or where he was moved to and from on each occasion. Plaintiff's criminal records show that he was moved in and out of NICI several times when his sentencing terms were changed—moves which are *Heck*-barred.

Plaintiff has not stated when he exercised a First Amendment right to access the courts that allegedly prompted Remacle's transfers of him. He has not provided facts about the court case he was working on, which communications about his legal work he had with Remacle, whether she entered any case management notes in his file about his access to courts, why she would have a motive or reason to stop him from doing legal work, or when any of this occurred. Plaintiff's facts do not support a causal nexus to support retaliation for exercise of a First Amendment right.

Plaintiff merely alleges that Remacle did nothing to change his medications when he complained. These allegations do not address the elements of retaliation. Plaintiff has not provided facts showing that Remacle had authority to change his medications. Remacle was a case manager, not a medical doctor or other prescription-dispensing professional. He cannot proceed on any retaliation claim against Remacle for lack of facts supporting a plausible claim.

Plaintiff alleges that ICIO case manager Dionne Gillum "would get everyone else process[ed] and denied Snyder equal protection with the due process of state and federal law in retaliation for [his] legal work…." Dkt. 46 at 13. Plaintiff has provided no details about his exercise of the constitutional right to work on legal cases in prison that

MEMORANDUM DECISION AND ORDER - 13

specifically provided a plausible predicate to Gillum allegedly retaliating against him. Plaintiff states that "Gillum and ICIO took all Snyder's legal documents, work and mail for the next quarter of a year. Keeping Snyder in segregation, insolation from the prison population." *Id*. at 13. Simply attaching the word "retaliation" to this set of facts does not state a claim. This claim is better construed as an access to courts claim, which the Court addresses below.

Plaintiff also alleges Gillum arranged a special transport for him on January 15, 2023, allegedly the day after he lost his case, "*Snyder v. Ramirez*." Dkt. 45 at 14. Then a day after his last case was closed, Gillum and staff gave him back his "material items." *Id*. The Court takes judicial notice of the docket sheet and case filings in *Snyder v. Ramirez*, Case No. 1:22-cv-00311-REP (Case 311), a federal habeas corpus case. Case 311 was dismissed with prejudice on September 7, 2023. *See* Case 311, Dkts. 56, 67. Plaintiff has provided nothing showing Gillum arranged a special transport on that date, or a later date when the United States Supreme Court dismissed his petition for writ of certiorari, December 16, 2024. *See* Case 311 at Dkt. 66. The date of January 15, 2023, the alleged "special transport" date, does not correspond to any court order in Case 311.

Even if Plaintiff *had* provided facts from which such a timeline could be gleaned, he cannot rely on mere chronology to state a retaliation or access to courts claim. He must show a causal nexus. There is no plausible reason for IDOC personnel to have kept Plaintiff in one housing unit as opposed to another simply because he had a federal habeas corpus petition pending. Grants of federal habeas corpus are extremely rare, and Plaintiff has not provided facts showing that prison officials monitored his habeas corpus case in particular

MEMORANDUM DECISION AND ORDER - 14

of all the habeas corpus cases filed in federal court. Plaintiff does not explain why Gillum would have a personal interest in a habeas corpus action such that she would retaliate against Plaintiff for filing or maintaining one.

Under the heading of "Glenn Armstrong," SAWC warden, Plaintiff asserts that he was moved 12 hours across the state to SAWC immediately after he filed this federal civil rights case in April 2023. Dkt. 46 at 16. He does not state who was responsible for moving him. There are no allegations that Armstrong had authority or was responsible for moving Plaintiff from another facility into SAWC.

Nor has Plaintiff shown how his move to SAWC was an adverse action. SAWC is a minimum security prison where—unlike other facilities—inmates can leave to go to work and come back.[3]

Although this case was filed in April 2023 and Plaintiff asserts that is when Armstrong's retaliation began, Plaintiff did not add Glenn Armstrong as a defendant until March 17, 2025. *See* Dkt. 36 (third Amended Complaint, later withdrawn by Plaintiff). There are no facts showing why Armstrong would have retaliated against Plaintiff before March 17, 2025. There are no facts showing that Armstrong had a relationship with any of the defendants who worked at other facilities around the state or would have had a motive to retaliate against Plaintiff for having filed the lawsuit.

---

[3] SAWC is 400-bed work camp for minimum- and community-custody men. The facility provides residents with opportunities for full-time, constructive, paid employment with government agencies, nonprofit organizations and private employers. The program helps residents develop good work habits, and marketable work skills while providing a financial resource to meet the residents' immediate and future needs. *See* https://www.idoc. idaho.gov/content/locations/prisons/st-anthony-work-camp (accessed 10/13/2025).

MEMORANDUM DECISION AND ORDER - 15

Plaintiff alleges that at SAWC, he "wrote the case and staff knew everything about it and in my case, because mom helped me do the legal work over JPAY MESSAGING." Dkt. 46 at 16. Simply because all staff had access to Plaintiff's J-pay messaging does not mean that they read his pleadings and found reason to retaliate even though they were not named in the pleadings and likely did not know the other state defendants. All of this is too speculative to support a retaliation claim against Armstrong this late in the litigation.

Plaintiff asserts that Melissa Carr, his case manager at ISCC, moved him to the maximum security facility based on alleged false Mexican Mafia and criminal record rumors. He was moved back, but she "refused to help fix my records, stop retaliating." Dkt. 46 at 20.

These are insufficient allegations to support a retaliation claim. The Court has rejected Plaintiff's retaliation claims based on the rumors, as explained above. Here, pairing the word "retaliation" with Plaintiff's prison moves does not show he can meet the elements of a retaliation claim based on other facts (of which there are none). Plaintiff does not provide facts showing that Carr had authority to move Plaintiff, that Plaintiff first exercised a constitutional right that was a predicate to any retaliation, or that Carr had any interest or stake in not having Plaintiff do legal work, reside at her facility, or be under her case management such that she would have been prompted to retaliate.

Plaintiff has had ample time to obtain facts to support his claims. He cannot proceed on retaliation claims against any defendant on implausibility grounds.

### 7. Discrimination Claims

Plaintiff alleges that Remacle discriminated against him by calling him "sex

offender names and Mexican Mafia" in "AP drug class." Dkt. 46 at 12. Plaintiff alleges

that "Gillum would get everyone else process[ed] and denied Snyder equal protection with

the due process of state and federal law in retaliation for [his] legal work, false records [sic]

and Gillum even stated IDOC is profiling me and will keep me in higher security housing

due to gang affiliation and past sex crimes." Dkt. 46 at 13.

Under the Equal Protection Clause, "all persons similarly circumstanced shall be

treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412,

415 (1920). However, "[t]he Constitution does not require things which are different in

fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310

U.S. 141, 147 (1940).

An equal protection claim may be established by showing that the defendant

intentionally discriminated against the plaintiff based on the plaintiff's membership in a

protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly-

situated individuals were intentionally treated differently without a rational relationship to

a legitimate state purpose, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy

Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

If there is "an obvious alternative explanation" for the state action, a plaintiff must

provide factual allegations that give rise to a plausible inference that the action was the

result of unconstitutional discrimination on the basis of "race, religion, or national origin."

*Iqbal v. Ashcroft*, 556 U.S. 662, 676-77, 682 (2009). A plaintiff must provide sufficient

allegations pointing to a discriminatory motive that "nudg[es]' his claim of purposeful

discrimination 'across the line from conceivable to plausible.'" *Id*. at 683 (quoting *Bell*

*Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).

As to Plaintiff's general discrimination claims, he has not alleged that he is a member of a protected class. Sex offenders are not a protected class under the Equal Protection Clause. *See United States v. LeMay*, 260 F.3d 1018, 1030–31 (9th Cir. 2001). Plaintiff also asserts that he is not a sex offender. Thus, the general claims fail.

As to discrimination based on Plaintiff being falsely labeled a sex offender, to the extent that these claims assert that Plaintiff's criminal sentencing and placement in alternative sentencing programs are implicated, they are barred by *Heck*, as explained above. To the extent that Plaintiff asserts he was discriminated against because Defendants treated him as a sex offender when he was not, he has not alleged when or where in his criminal records the sex offender notations were corrected or clarified such that Defendants should have referred to them only *as charges*. He has not shown that he was treated differently from other inmates with similar notations in their records, or that there was not a rational relationship for the different treatment. There are no allegations that he was forced into a sex offender treatment program, which have triggered a due process analysis, such as in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997).

As to "discrimination" based on the alleged "Mexican Mafia" designation, there is a rational alternative explanation—that Plaintiff himself is the origin of his Mexican Mafia membership "fact" and that it is included in the public records of a criminal and a civil case. As noted above, there is little prison officials can do to verify whether Plaintiff's statement was true or untrue, and, thus, they did not violate his equal protection rights by treating him as though his statement was true, because he originated it and it was

unverifiable.

Plaintiff has not stated a plausible discrimination, equal protection, or due process claim against any defendant, and these claims are subject to dismissal with prejudice.

### 8. Defamation and Slander Claims

Plaintiff alleges that all named defendants engaged in defamation and slander—claims generally are not cognizable in § 1983 actions. *Paul v. Davis*, 424 U.S. 693, 697–710 & nn. 3–4, (1976). An exception is that defamation by government officials may support a Fourteenth Amendment claim for deprivation of property or liberty if a plaintiff can meet the "stigma plus test." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002). To meet the stigma plus test, a plaintiff must allege "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the 'denial of some more tangible interest[], such as employment,' or the alteration of a right or status recognized by state law." *Id*. Plaintiff has not alleged facts showing that he meets the "stigma plus test," especially given the insufficient of his factual allegations as to the rumors, discussed above. These claims are subject to dismissal for failure to state a claim.

### 9. Access to Courts Claims

Plaintiff alleges that Defendants prevented him from accessing the courts. Under the First Amendment, prisoners have a right to access the courts for the purpose of filing of direct criminal appeals, habeas petitions, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 346, 354 (1996). Claims for denial of access to the courts may arise from the loss of a suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002).

To state an access to courts claim alleging that a prisoner suffered the loss of a suit that cannot now be brought, a prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) specific allegations showing that remedy sought in the access to courts claim is not otherwise available in a suit that could be brought. *Id*. at 415-17. There is "no abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Plaintiff has not shown loss of a claim with the type of detail necessary to show it is nonfrivolous or arguable. He must provide detailed facts showing an actual injury, but he has provided only speculation.

Plaintiff asserts that Gillum and others took all of his legal documents, work, and mail for a quarter of a year. Dkt. 46 at 13. He has not stated any *Christopher* injury to any court case or claim resulting from this alleged action.

Plaintiff alleges that Remacle and Gillum made sure he had no law library, because they did not want him to expose to the public that the state of Idaho had falsified his criminal history. *Id*. However, public records already contained this information they allegedly wanted to hide, and he has not stated any *Christopher* injury to any court case or claim resulting from these acts.

Plaintiff alleges that Wilson would not address any of his complaints about the law library application not working on his J-Pay tablet. Construed as an access to courts claim, it fails for lack of any identified *Christopher* injury to any court case or claim.

MEMORANDUM DECISION AND ORDER - 20

Plaintiff also asserts that various prison staff took adverse actions against him regarding his general access to courts. An unidentified paralegal never responded to Plaintiff's requests for law books or help. Dkt. 46 at 17. "Once a Sgt for SAWC prison saw Snyder doing legal work. Staff shut off all inmate's law library function at the mother Atlas program computer." *Id*. Plaintiff sent concern forms and grievances to Armstrong, but he did not restore Plaintiff's access to the law library. *Id*. Even if this is all true, Plaintiff has not sufficiently alleged that he suffered an actual injury to a case or claim as a result of having no access to a prison law library.

### 10. Legal Mail Claims

Plaintiff states that Remacle permitted IDOC staff to open his legal mail outside of his presence for security reasons, because he had been identified as a Mexican Mafia member. Dkt. 46 at 12. He does not elaborate on what he means by "legal mail." The Court construes this claim in the context of his other contemporaneous allegations about legal mail, which focus only on the opening of mail from the courts. *See* Dkt. 44 at 9 ("At 1130am on Wednesday October 11th Snyder just received legal mail that was already opened from United States Supreme Court.").

Court mail is not considered privileged legal mail, because it is a matter of public record. *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). Plaintiff has provided no facts showing that mail to or from his attorneys was opened outside his presence and that, if this happened, Defendants had anything to do with it. There are no dates or other facts supporting any such claim. He may not proceed.

Plaintiff states that Wilson allowed staff to steal his legal mail and open everything outside his presence. *Id*. at 16. Plaintiff provides no dates and no details of what was stolen or opened. He does not show that Wilson supervised mail staff. He may not proceed.

### 11. Housing Claims

There is no constitutional right to be housed in a particular unit in prison or the facility of one's choice. *See Meachum v. Fano*, 427 U.S. 215, 255 (1976); *McCune v. Lile*, 536 U.S. 24, 38 (2002).

Plaintiff asserts that Gillum stated the IDOC was profiling him and kept him in higher security housing due to gang affiliation and past sex crimes. As noted above, it was reported in a criminal case and a civil case that he himself stated that he was a member of the Mexican Mafia. There is also a rape charge on his criminal record; Plaintiff has pointed to no clear resolution of that charge. Prison officials likely had no way to verify whether Plaintiff was or was not affiliated with the Mexican Mafia, and, thus, they were entitled to take precautions in housing him. In addition, Plaintiff's 2021 charges and subsequent criminal conviction for battery on certain personnel in Case 11291 may also have been an adequate reason for Plaintiff to be kept in more restrictive housing. These allegations regarding Plaintiff's disagreement with his housing fail to state a claim upon which relief can be granted.

Plaintiff alleges that he asked Emma Wilson to move him from ISCC medium/maximum security and place him in minimum security. She allegedly told him that, with the child molestation and rape accusations and his membership in the Mexican mafia, he must be kept in a more secure housing unit. Dkt. 46 at 15. There is no date this

occurred and no facts showing that Wilson had authority to move him. Because there inadequate factual grounds to show that IDOC officials should not have used the information in public records in housing decisionmaking, this claim fails to state a claim upon which relief can be granted. The federal courts' "duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

Plaintiff also asserts that Wilson moved him nonstop—33 times through 5 institutions. Dkt. 46 at 16. Plaintiff has not alleged that Wilson, a case manager at one IDOC facility, had authority to move him to and from various institutions. Plaintiff has also alleged that Remacle was the mastermind behind all of these moves, which is contrary to the allegation that Wilson played this role. Two and half years into this lawsuit, Plaintiff has not shown when he was moved, where he was moved, or why he was moved. These allegations lack sufficient facts to state a plausible civil rights claim within prison officials' expertise and broad discretion to house inmates where they see fit.

Plaintiff asserts that ISCC case manager Melissa Carr said he would be moving to the maximum security institution because of his criminal records and Mexican Mafia ties. Dkt. 46 at 19. Within three days, he was moved back and placed under Wilson's case management. *Id*. These allegations are based on inadequate factual grounds and do not support a claim.

## 12. Sexual Abuse Claim: Defendant Wilson

Plaintiff alleges that Wilson "would make gross sexual gestures with her tongue at

[Plaintiff]" in their meetings in order to act disrespectfully to Plaintiff. Dkt. 46 at 24. There are no dates of these incidents, and Plaintiff does not state that he ever reported this conduct to any other staff or supervisors.

There is no question that sexual abuse is conduct which is "inconsistent with contemporary standards of decency" and "repugnant to the conscience of mankind," and therefore violates the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (internal citations omitted). Verbal sexual harassment can constitute an Eighth Amendment claim if the resulting harm was sufficiently severe. *See Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997).

In *Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004), inmate Austin asserted that a correctional officer allegedly exposed his penis to the inmate through the glass of an officer's control booth for approximately 30 seconds, and said, "come suck this white dick, boy." *Id*. at 1169-72. The Ninth Circuit held that the incident was not enough to meet the standard for sexual abuse under the Eighth Amendment. That Court reasoned:

> Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, *see Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment. *See e.g., Blueford v. Prunty*, 108 F.3d 251, 254-55 (9th Cir. 1997) (holding that prison guard who engaged in "vulgar same-sex trash talk" with inmates was entitled to qualified immunity); *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir.1997). Williams was in an elevated, glass-enclosed control booth when he exposed himself to Austin and this isolated incident lasted for a period of no more than 30-40 seconds. Williams never physically touched Austin. In the light of these facts, the district court properly concluded that this incident was not sufficiently serious to constitute an Eighth Amendment violation.

MEMORANDUM DECISION AND ORDER - 24

*Id*. at 1172. Clearly, the sexual misconduct allegations against Wilson here do not rise to the level of those in *Austin*, and even the allegations in *Austin* did not rise to the level of a constitutional violation. This claim is subject to dismissal for failure to state a cognizable claim.

### 13. Disciplinary Punishment Claim: Defendant Armstrong

Armstrong issued Plaintiff a Disciplinary Offense Report (DOR) three months after Plaintiff left SAWC. The DOR asserted that Plaintiff unlawfully possessed and defaced an institutional library book. Dkt. 46 at 18. Contrarily, Plaintiff asserts that he was gifted the book from another inmate. The DOR of "destruction of property over $25" required Plaintiff to pay $140.00 to replace the book. Dkt. 46-5 at 23-24. Plaintiff asserts that Armstrong's actions in affirming the DOR on appeal violated his constitutional rights. *Id*. at 26.

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *See Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). Prison officials may enforce any sanctions that are within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Construed as a claim that the government deprived Plaintiff of property, all that was required was notice and some type of hearing, *see Wolff*, 418 U.S. at 57-58, which was accomplished in the DOR process.

More recently, the Supreme Court has held that the negligent or intentional

deprivation of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Idaho law provides a private right of action for conversion. *See*, *e.g.*, *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (a valid conversion claim requires that (1) the tortfeasor exercised wrongful dominion of property, (2) the plaintiff owned or possessed the property, and (3) "the property in question is personal property."). Therefore, Plaintiff has (or had) an adequate state law remedy for Defendant Armstrong's allegedly wrongful conversion of Plaintiff's private property and he may not proceed on a Fourteenth Amendment claim.

Plaintiff may not proceed under any theory on a constitutional cause of action regarding the outcome of the book dispute.

### 15. Failure to Protect: Defendant Carr

Plaintiff asserts that Carr moved a known gang member into his cell at 1:30 a.m. on the day before Plaintiff was to be released from ISCC custody. Dkt. 46 at 20-21. Plaintiff asserts that he complained, but an unknown staff sergeant and Carr would not move the gang member inmate from his cell. Plaintiff asserts that the gang member injured him by beating him with a combination padlock and his fists.

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. An Eighth Amendment claim has two components. The first is an objective showing: that a plaintiff is "incarcerated under conditions posing a substantial risk of serious harm" or has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825,

834 (1994) (internal quotation marks omitted).

The second component is a subjective showing: that Defendant acted with "deliberate indifference," which "entails something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Specifically as to inmate-on-inmate violence, prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under the Eighth Amendment through § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (citation and punctuation omitted).

Plaintiff may be able to state a cognizable claims with these allegations. This claim is two years newer than the claims upon which Plaintiff was proceeding in the second Amended Complaint. The Court will order the Clerk of Court to sever this claim from this case into a new lawsuit. Plaintiff will be required to file a new complaint that provides sufficient factual information to support the claim, within 30 days after the new case is opened, or the claim will be dismissed with prejudice.

The Clerk will be ordered to file this Order in the new case and notify Plaintiff of

the new case number. Notwithstanding the severance, the date of the filing of the fourth Amended Complaint in this action (April 2, 2025) will be the operative filing date for statute of limitations purposes for this claim and the new case. That means Plaintiff's injuries asserted in the new action must have occurred no earlier than April 2, 2023, to meet the statute of limitations. The claim in this case will be dismissed without prejudice in this case.

### 16. State Law Claims

Petitioner requests that the federal court exercise jurisdiction over his state law claims. Dkt. 46 at 5. The Court declines to do so, given that there are no remaining federal claims to anchor any state law claims. The state law claims will be dismissed without prejudice in this action. If Petitioner desires to assert a state law claim related to his severed claim in his new case, he may do so.

### 17. Conclusion

For the reasons set forth above, the Court concludes that Plaintiff may not proceed on his fourth Amended Complaint. Further amendment in this case would be futile and a waste of judicial resources. Accordingly, the fourth Amendment Complaint (Dkt. 46) will be dismissed with prejudice for failure to state a claim upon which relief can be granted, with the exceptions set forth below.

### ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Dismissal (Dkt. 39) is DENIED as MOOT.

MEMORANDUM DECISION AND ORDER - 28

2. Defendants' Motion for Summary Judgment (Dkt. 39) is DENIED as MOOT.

3. Plaintiff's Motion to Amend (Dkt. 45) IS GRANTED.

4. Plaintiff may not proceed on his fourth Amended Complaint (Dkt. 46). The following claims are dismissed without prejudice: (1) those subject to *Heck v. Humphrey*; (2) the failure-to-protect claim against Melissa Carr upon which he is permitted to file a new complaint in a new action; and (3) any state law claims. All other claims are dismissed with prejudice for failure to state a claim upon which relief can be granted.

5. The Court will not entertain any further filings from Plaintiff in this case. Plaintiff shall not file a motion for reconsideration or any other document except a notice of appeal and a new in forma pauperis application if he desires to appeal.

6. At this time, Plaintiff's in forma status is revoked, because he has been out of prison for nearly a year and his current in forma pauperis application is out of date. He must file a new in forma pauperis application if he desires to proceed with an appeal without paying the filing fee.

DATED: February 4, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 29